UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD, ) <br> LOCAL UNION NO. 682, ) <br>   ) <br>         Plaintiff, ) <br>   ) <br>    vs. ) <br>   ) <br> THOELE ASPHALT PAVING, INC., ) <br>   ) <br>         Defendant. ) | Case No. 4:11CV00907 AGF |

# MEMORANDUM AND ORDER

Plaintiff, International Brotherhood of Teamsters Local Union No. 682, Construction, Building Material, Ice and Coal, Laundry and Dry Cleaning, Meat and Food Products Drivers, Helpers, Warehousemen, Yardmen, Salesmen and Allied Workers, brings this action pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("the LMRA"), to enforce an arbitrator's decision regarding the termination by Defendant, Thoele Asphalt Paving, Inc. ("Thoele"), of Daniel Loeffelman, a former employee of Defendant and a member of the Plaintiff union. Defendant counterclaims asking the Court to vacate the arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §10. Now before the Court are the parties' cross motions for summary judgment on each of these claims. For the reasons set forth below, Plaintiff's motion for summary judgment will be granted, and Defendant's motion for summary judgment will be denied.

**Background**

The record establishes the following facts, which are undisputed, unless otherwise noted. Plaintiff is a labor organization and the exclusive bargaining representative for all regular, full-time dump truck drivers in Eastern Missouri. Defendant operates a paving and hauling business. On or about April 3, 2008, Plaintiff and Defendant entered into a collective bargaining agreement entitled the Master Dump Truck Agreement ("the CBA"). (Doc. No. 23-8.) On March 5, 2010, Defendant discharged Loeffelman following a work-related accident in which the dump truck he was operating tipped over. Loeffelman filed a timely grievance pursuant to Article VI, the arbitration clause of the CBA, asserting that he was unjustly discharged in violation of Article V. In accordance with Article VI, Section 3, a grievance meeting was held on March 29, 2010. The parties failed to reach an agreement during that meeting, and Defendant moved the grievance to arbitration pursuant to Article VI, Section 4 of the CBA.

A hearing was held on January 7, 2011 before the arbitrator, Joseph Rohlik. Prior to the arbitration hearing, the parties were unable to reach a stipulation as to the issues to be arbitrated. The arbitrator adopted the Plaintiff's formulation of the issues: whether Loeffelman was discharged for just cause; and, in the event that he had not been discharged for just cause, what the remedy should be. (Doc. Nos. 23-1, 23-2, 23-10.)

Proceeding under this formulation of the issues, the parties presented evidence, examined and cross-examined witnesses, and submitted their respective post-hearing briefs. Thereafter, the arbitrator issued a decision premised on his determination that the CBA, when taken as whole, "embodie[d] the concept of 'reason,' i.e., just cause for

discipline." (Doc. No. 23-10.) Finding that Defendant had proved neither negligence nor that Loeffelman failed to follow required procedures, the arbitrator concluded that Defendant had not shown "just cause" for Loeffelman's discharge and sustained the grievance, ordering Defendant to reinstate Loeffelman and awarding him back pay. (Doc. No. 23-7 at p.11-12.)

Defendant has refused to comply with the directives of the arbitrator's decision, and Plaintiff brings this action to enforce the arbitration award. Defendant counterclaims to vacate the arbitration award on the grounds that the arbitrator over stepped his bounds by implying a requirement of just cause for termination under the CBA, and by ordering reinstatement and back pay.

**The CBA**

The CBA contains the following applicable provisions:

### Article II
### MANAGEMENT RIGHTS

Except as expressly limited by a specific provision of this Agreement, the Company retains and shall continue to have the sole and exclusive right to manage its business and direct its employees. All inherent rights of management not expressly limited by a specific provision of this Agreement are vested in the Company.

### Article III
### ENTIRE AGREEMENT

This Agreement sets forth the full and complete understanding of the parties and may not be modified in any respect except by a written document signed by the parties. Nothing in this Agreement shall be construed as requiring either party hereto to do or refrain from doing anything not explicitly and expressly set forth in this Agreement; nor shall either party be deemed to have agreed or promised to do or refrain from doing anything unless this Agreement explicitly and expressly sets forth such agreement or promise.

## Article V
## SENIORITY

**Section 2**   During the first sixty (60) calendar days of service with the Company, employees shall be considered to be temporary and probationary and shall not be entitled, except as otherwise provided, to any benefits conferred by this Agreement; and such employees may be discharged or disciplined at the discretion of the Company for any reason without recourse under the grievance-arbitration provisions or otherwise by the Union or the employee. . . .

**Section 3**   An employee's seniority shall end if any of the following occur . . . [t]he employee has quit or has been terminated.

## Article VI
## GRIEVANCE-ARBITRATION PROCEDURE

Grievances may be filed by the Union and/or an employee over differences involving the interpretation or application of this Agreement. . . . The arbitrator's decision shall be final and binding, and the arbitrator shall have no authority to modify, add to or subtract from this Agreement.

## Article VII
## NO STRIKES/NO LOCKOUTS

**Section 1**   The Union and each employee agree that during the term of this Agreement there shall be no picketing or strikes, including safety strikes, slowdowns or any other interferences with the Company's operations.  Any employees who violate this provision may be terminated without recourse to the grievance-arbitration procedure. . . .

(Doc. No. 23-8.)

It is undisputed that the CBA contains no explicit provision requiring "just cause" for discharge or discipline.

**Arguments of the Parties**

In support of its motion for summary judgment, Plaintiff asserts that the arbitration award should be enforced as a valid exercise of the arbitrator's authority pursuant to § 301 of the LMRA.  Plaintiff contends that the arbitrator properly implied a "just cause" limitation in the CBA and that to do otherwise would render Article V, the seniority

4

provision on which the grievance was premised, meaningless. Plaintiff further contends that if, as Defendant asserts, any employee may be dismissed without cause, there is no need for Section 2 of Article V which provides that probationary employees may be dismissed without cause and without recourse to arbitration.

Defendant moves to vacate the award pursuant to § 10(a)(4) of the FAA contending that the arbitrator exceeded the scope of his authority under the CBA. Specifically, Defendant asserts that the arbitrator erred because the CBA makes no reference to a requirement of "cause" for termination, precludes the arbitrator from imposing obligations not contained in the CBA, and reserves to Defendant the "sole and exclusive right to manage and direct" its employees. CBA, Articles II & III. In addition, Defendant asserts that Loeffelman's discharge did not violate Article V, the provision of the CBA under which he filed his grievance, because that provision addresses seniority and not grounds for discharge. Finally, Defendant contends that the arbitrator exceeded the scope of his authority by awarding reinstatement and back pay, but failing to take evidence regarding Loeffelman's ability to return to work.

**Applicable Law**

### **Summary Judgment**

On a motion for summary judgment, the moving party must establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "'[F]acts must be viewed in the light most favorable to the nonmoving party, [but] only if there is a genuine dispute as to those

5

facts.'" *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No.* 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

In this case both parties move for summary judgment. Although they disagree on the interpretation of certain facts, neither party contends that there are factual issues precluding the entry of summary judgment. The parties seek instead a determination of the legal issues relating to the validity of the arbitrator's decision. The Court agrees that there are no material facts in dispute and proceeds to a consideration of the legal issues presented.

**Arbitration**

A dispute is subject to arbitration "if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." *Bank of America, N.A. v. UMB Financial,* 618 F.3d 906, 911(8th Cir. 2010) (quotation omitted). "[A] party who has not agreed to arbitrate a dispute cannot be forced to do so," but the grant of power to an arbitrator under a collective bargaining agreement should be broadly construed. *Simmons Foods, Inc. v. H. Mahmood J. Al-Bunnia & Sons Co.*, 634 F.3d 466, 468-69 (8th Cir. 2011); *see also PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974, 977 (8th Cir. 2000).

"'The question of whether a dispute should be arbitrated under a contract is one of contract interpretation.'" *Bank of America,* 618 F.3d at 911(quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 998 (8th Cir. 2006)). Any doubts concerning the scope of arbitrable issues, including questions regarding "'the construction of the contract language itself'" should be resolved in favor of arbitration. *PRM Energy Systems, Inc. v. Primenergy*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25(1983)). "'In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the exclusion clause is vague and the arbitration clause quite broad.'" *Builders Ass'n of Kansas City v. Greater Kansas City Laborers Dist. Council*, 869 (8th Cir. 1964) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U. S. 574, 584-85 (1960)).

Only in limited circumstances may a court vacate an arbitration award as beyond the power of the arbitrator. *Trailmobile Trailer, LLC v. Int'l Union of Elec. Workers*, 223 F.3d 744, 746-47 (8th Cir. 2000). For example, an award that fails to "draw its essence" from the parties' contract may be overturned. *Id*. An award is deemed to "draw its essence" from the agreement if the "language, context," or any other "indicia of the parties' intention" permit a determination that the award is derived from or has a basis in the agreement. *Williams v. Nat'l Football League*, 582 F.3d 863, 883 (8th Cir. 2009).

Although the arbitrator's authority is broad, it is not unlimited; an arbitrator is not free to disregard or modify unambiguous contract provisions. *Trailmobile Trailer, LLC*, 223 F.3d at 47. Nonetheless, "'[i]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,'" his decision should be upheld. *Breckenridge O'Fallon, Inc. v. Teamsters Union Local No. 682,* 664 F.3d 1230, 1234 (8th Cir. 2012) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

If the "'plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, courts and arbitrators are obliged to consider other relevant sources of the parties' intent.'" *See, e.g., Breckenridge O'Fallon, Inc. v. Teamsters Union Local No. 682*, No. 4:09CV2005 CDP, 2011 WL 225810, at *4 (E.D. Mo. Jan. 24, 2011) (quoting *Boise Cascade Corp. v. Paper Allied–Indus., Chem. & Energy Workers*, 309 F.3d 1075, 1080 (8th Cir. 2002)). In so doing, they must read the agreement as a whole, give its terms their ordinary meaning, and "prefer a construction that attributes a reasonable meaning to all the provisions of the agreement . . . to one that leaves some of the provisions without function or sense." *Portell v. AmeriCold Logistics, LLC*, 571 F.3d 822, 824 (8th Cir. 2009) (internal quotations omitted). When such principles are used to ascertain the parties' intent, it is axiomatic that "conflicting provisions of an agreement should be harmonized to the extent possible." *Bureau of Engraving, Inc. v. Graphic Comm. Int'l Union, Local 1B*, 284 F.3d at 821, 825 (8th Cir. 2002).

**Discussion**

Defendant first asserts that the arbitrator exceeded the scope of his authority under the CBA when he determined that Loeffelman's termination was arbitrable and subject to a "just cause" limitation.  Defendant contends that such determinations are barred under the CBA because it contains no explicit provision requiring "just cause" for termination and, in the management rights provision of Article II, the CBA reserves to Defendant the "sole and exclusive right to manage and direct" its employees.  CBA, Article II.

The Court does not agree and, for the following reasons, concludes that the arbitrator acted within his authority under the CBA when he determined that Loeffelman's termination was arbitrable and subject to a just cause limitation.  First, the CBA contains no explicit reference, either permissive or prescriptive, to the arbitration of termination issues, and the arbitration clause is broadly worded providing that "differences involving the interpretation or application of [the agreement]" are subject to arbitration.  CBA, Article VI.  In addition, the management rights provision is subject to limitation by specific provisions of the CBA.[1]  Inasmuch as Section V of the CBA refers to the termination of probationary employees "for any reason" and without recourse to arbitration, it is reasonable to conclude that the management rights provision does not grant Defendant unfettered authority to terminate non-probationary employees without cause.  Thus, given the breadth of the arbitration provision and the absence of a specific exclusion prohibiting the arbitration of discharge issues, it was appropriate to conclude

---

[1] Article II begins:  "[e]xcept as expressly limited by a specific provision of this Agreement. . . ."

9

that the parties' dispute regarding Loeffelman's discharge was one involving the "interpretation and application" of Section V and thus subject to arbitration under the CBA.

Moreover, given the ambiguity of the CBA regarding a "just cause requirement" the arbitrator properly employed principles of contract interpretation to determine the parties' intent.  Such interpretation is within the ambit of his authority and the result he reached appropriately derives from a reading of the agreement as a whole, allowing for the reconciliation of seemingly discordant provisions.  *Portell*, 571 F.3d at 824.

For example, Article V, Section 2 provides that probationary employees "may be discharged or disciplined at the discretion of the Company for any reason without recourse under the grievance-arbitration provisions . . . ."  If, as Defendant urges, the CBA gave it unfettered discretion to terminate employees at any time, this reference to termination "for any reason" would be unnecessary or contradictory.  In addition, the distinction drawn in Section V between the rights of probationary and non-probationary employees would be unnecessary if all employees could be terminated without cause at any point in their employment.  Similarly, the language in Section VII of the CBA providing for termination without recourse to arbitration for failure to comply with the prohibition on picketing, strikes and work disruptions would be unnecessary if there were no requirement of just cause for a discharge not involving such actions.

Looking to the arbitration clause itself, the Court notes that if Defendant were free to discharge its employees for any reason or no reason, the right conferred in Section VI of the CBA to arbitrate employment grievances related to the interpretation or application

10

of the CBA would be contradictory or meaningless. *See PaineWebber, Inc. v. Agron*, 49 F.3d 347, 352 (8th Cir. 1995) (stating that "some standard of discernable cause is inherently required" where an arbitrator is called on to interpret the employment relationship); *see also Raymond James Fin. Serv., Inc. v. Bishop*, 596 F.3d 183, 184 (4th Cir. 2010) (noting that an arbitration procedure designed to interpret an employment relationship would serve no identifiable purpose if that employment was purely at-will); *Truck Drivers Local 705 v. Schneider Tank Lines*, 958 F.2d 171, 175 (7th Cir. 1992) (presence of an arbitration clause implies a "just cause" requirement); *Smith v. Kerrville Bus Co.*, 709 F.2d 914, 917 (5th Cir. 1983) (noting that "[i]n instances where the language of a collective contract does not explicitly prohibit dismissal except for just cause, arbitrators typically infer such prohibitions from seniority clauses or grievance and arbitration procedures.").

Defendant next asserts that the dispute here was not subject to arbitration because Defendant did not violate Section V, the provision of the CBA cited by Loeffelman in his grievance, and because that section provides no independent basis for relief. This argument is also without merit. The CBA requires neither a violation of its provisions nor an independent basis for relief as a predicate for arbitration. Instead, the parties agreed to arbitrate "differences involving the interpretation and application" of the CBA. CBA, Article VI. As set forth above, the question of the propriety of Loeffelman's discharge is clearly such a question.

On the basis of the foregoing, the Court concludes that the arbitrator did not exceed the scope of his authority in determining that the termination issue was arbitrable,

11

and that the CBA embodied a "just cause" requirement for termination. For this reason, Defendant's motion to vacate the award on those grounds will be denied.

Defendant also moves for summary judgment with respect to the remedial portion of the arbitration award asserting, in the alternative, that the arbitrator lacked the authority to award reinstatement and back pay or, if he had such authority, that he should have considered evidence of Loeffelman's ability to return to work before making such an award.

In support of its argument that the arbitrator lacked the authority under the CBA to order remedial measures, Defendant relies upon *Centralab, Inc., Fort Dodge, Iowa v. Local No. 816, Int'l Union of Elec., Radio and Mach. Workers of America*, 827 F.2d 1210, 1217 (8th Cir.1987), where the Eighth Circuit affirmed a district court order vacating the remedial portion of an arbitration award. *Id*. at 1211. In *Centralab*, the parties agreed that the agreement authorized the arbitrator to invalidate unreasonable time standards for incentive pay. *Id*. The arbitrator did so, but also set new time standards and ordered retroactive pay adjustments. *Id*. The Eighth Circuit's determination that this portion of the arbitration award exceeded the arbitrator's authority was premised on explicit language in the agreement restricting him to a determination regarding the propriety of the existing wage rate,[2] and forbidding the imposition of such a remedy. *Id*. The Eighth Circuit explained that unless the agreement "clearly and unmistakably

---

[2] The agreement at issue in *Centralab* provided as follows: "The arbitrator shall limit his decision to whether the rate set by the [employer] may reasonably be expected to yield the earnings provided in [another section of the agreement]." *Centralab*, 827 F.2d at 1217.

provide[s]" that the remedy or the issue was not subject to arbitration, courts properly defer to the arbitrator's judgment regarding the remedial portion of his award. *Id*. at 1213 (quoting *AT & T Tech., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986)). With respect to remedy, "interpretation of the collective bargaining agreement is a question for the arbitrator," and the Court may not substitute its judgment or interpretation for that of the arbitrator. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593,599 (1960) (explaining that " [i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his").

Applying the principles discussed in *Centralab*, the Court finds that the remedial portion of the arbitrator's award should stand because there is no "clear and unmistakable" language in the CBA either prohibiting such remedies or requiring the arbitrator to premise such a remedy on a finding that Loeffelman could return to work. In the absence of an explicit provision prohibiting the remedial portion of an award, the arbitrator's interpretation will stand. *See, e.g., Contico Int'l, Inc. v. Local 160, Leather Goods, Plastics and Novelty Workers*, 738 F. Supp. 1262, 1267 (E.D. Mo. 1990) ("If the agreement is ambiguous and susceptible of more than one interpretation, the arbitrator's construction of that ambiguity is binding on the parties and the courts.").

In light of these principles, the Court cannot say that, having properly considered the propriety of the discharge, the arbitrator exceeded his authority by employing the

13

remedies of reinstatement and back pay to return the parties to the positions they occupied before the disputed termination.

With respect to the question of whether the arbitrator erred by ordering reinstatement and back pay, the Court further notes that although Defendant objected to the formulation of the submitted issue, the parties proceeded to arbitration, and the arbitrator informed them that he would consider not only the propriety of the discharge but also, if necessary, the appropriate remedy. On notice that the arbitrator would consider the question of remedy, Defendant was obligated to present any evidence it may have had that Loeffelman could not return to work or that reinstatement was inappropriate. It is undisputed that Defendant offered no evidence in this regard. Having determined that the arbitrator had authority to order reinstatement and back pay, the Court cannot conclude that the arbitrator nonetheless erred in ordering that remedy in the absence of evidence that Loeffelman could return to work.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (Doc. No. 18 ) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Doc. No. 21) is **DENIED**.

A separate judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of September, 2012.